**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PASTOR STEPHEN UKO UDOH, <br><br> Plaintiff, <br><br> v. <br><br> HERMINIA MOREIRA, DAWN SOLARI, And STEPHEN B. RUBIN, <br><br> Defendants. | Civil Action No. 14-2929 (FLW)(LHG) <br><br> **OPINION** |

**WOLFSON, United States District Judge**:

Before the Court are the motions of Defendants Herminia Moreira, Dawn Solari, and Hon. Stephen B. Rubin to dismiss the Complaint of *pro se* Plaintiff Stephen Uko Udoh. Plaintiff brings claims against Defendants under 42 U.S.C. § 1983, arising from Plaintiff's January 2012, involuntary commitment to a psychiatric hospital, and seeks $35 billion in damages. Defendants contend that this Court lacks subject-matter jurisdiction over the claims in the Complaint and move for dismissal, pursuant to Fed. R. Civ. P. 12(b)(1), under the *Rooker-Feldman* Doctrine and the Eleventh Amendment to the United States Constitution. Further, Defendants contend that Plaintiff has failed to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the Court finds that it lacks jurisdiction over Plaintiff's Complaint as brought against Defendants Dawn Solari and Hon. Stephen B. Rubin in their official capacities. Further, the Court finds that Plaintiff has failed to state a claim against all Defendants in their individual capacities. Plaintiff's Complaint is therefore dismissed with prejudice on all grounds as raised against all Defendants.

1

I. FACTUAL BACKGROUND

The allegations in the Complaint now before the Court are extremely limited. Plaintiff alleges:

> Defendant [Moreira] violated Plaintiff constitutional rights by conniving with the racist and evil judge, Rubin and the racist and evil state prosecutor, Dawn M. Solari, to order Plaintiff to Ann Klein Forensic Center to be institutionalized after Plaintiff refused to plead guilty while forced by Defendant. Plaintiff was unlawfully ordered by Defendant and racist Judge Rubin and racist Prosecutor on January 6, 2012, after 2 expert doctors – Andrew P. Brown and Dr. Kurra stated in their report that Plaintiff was only upset for being terminated unlawfully from his state job. A normal situation to make some annoying calls to his former place of work. Defendant violated Plaintiff constitutional rights by refusing to release the reports of the 2 expert doctors to Plaintiff. 3rd degree false charge the U.S. district Court should award Plaintiff $35 billion dollars plus court fees for propensity impunitive damages.

The Court also takes judicial notice (i) that Herminia Moreira was an Assistant Deputy Public Defender for the State of New Jersey in January 2012, and served as Plaintiff's defense counsel in his commitment proceeding; (ii) that Dawn Solari was the Hunterdon County Assistant Prosecutor at Plaintiff's commitment proceeding; (iii) that Hon. Stephen B. Rubin was a judge of the Superior Court of New Jersey, Criminal Division, presiding over Plaintiff's commitment proceeding, and (iv) of the dockets in Plaintiff's prior filings before this Court.

Reading the Complaint in light of these facts, the Court understands that Plaintiff seeks $35 billion in damages plus court fees for injuries allegedly inflicted at and surrounding his January 6, 2012 involuntary commitment to the Ann Klein Forensic Center psychiatric facility. Plaintiff alleges that his defense counsel, Defendant Moreira (i) "connived" with the prosecutor and judge in his case to have him institutionalized; (ii) attempted to "force" Plaintiff to plead guilty to whatever criminal charges were pending against him, or perhaps to consent to commitment, but Plaintiff refused; and (iii) refused to release to Plaintiff the expert reports of two doctors, which Plaintiff believed would be beneficial to his defense. Plaintiff alleges that the

2

prosecutor and judge in his case, Defendants Solari and Rubin, respectively, (i) "connived" with Plaintiff's defense counsel and one another to have Plaintiff committed; and (ii) "unlawfully ordered" that Plaintiff be committed to a psychiatric institution.

II. PROCEDURAL HISTORY

Plaintiff filed his first Complaint against, *inter alia*, Defendants Rubin, Solari, and Moreira, on December 9, 2013. *See Stephen Uko Udoh v. Stephen B. Rubin et al.*, 3:13-cv-07384. Another judge in this District, Hon. Joel A. Pisano, now retired, granted Plaintiff's application to proceed *in forma pauperis*, but dismissed Plaintiff's Complaint, without prejudice, for failure to state a claim satisfying the requirements of Fed. R. Civ. P. 8. Plaintiff was given thirty (30) days in which to file an amended complaint in the action, but did not do so. Instead, on December 13, 2013, Plaintiff filed two new actions. In the first, *Stephen Uko Udoh v. State of New Jersey et al.*, 3:13-cv-07491, he named Defendant Rubin, Defendant Solari, the State of New Jersey, and another individual as Defendants. In the second, *Stephen Uko Udoh v. Stephen B. Rubin et al.*, 3:13-cv-07492, he named all three Defendants in this case, as well as several other individuals and institutions. The allegations in both of these actions were substantially identical to those now before the Court, if not more extensive; Plaintiff complained of having been arrested, subjected to a criminal proceeding in New Jersey Superior Court, and committed to Ann Klein in violation of his constitutional rights. On December 20, 2013, Judge Pisano dismissed, with prejudice, the second-filed 7492 action as duplicative of the 7491 action. On January 2, 2014, Judge Pisano dismissed Plaintiff's complaint in the 7491 action with prejudice on the grounds that, among other things, Defendant Rubin was entitled to judicial immunity and Defendant Solari was entitled to prosecutorial immunity. No basis was provided for dismissing the Complaint against Defendant Moreira because neither the 7491 complaint nor the 7492

3

complaint alleged any specific conduct by Moreira, despite the 7492 complaint explicitly naming her as a defendant.

On May 8, 2014, Plaintiff filed the present matter, his fourth challenging his January 2012 commitment to Ann Klein. On September 30, 2014, Defendants Solari and Moreira moved to dismiss. Defendant Rubin filed his own, separate motion to dismiss on October 14, 2014. Reviewing both motions together, Defendants move to dismiss Plaintiff's Complaint (i) for lack of jurisdiction, pursuant to the *Rooker-Feldman* doctrine; (ii) for lack of jurisdiction under the Eleventh Amendment; (iii) as time-barred by the applicable statute of limitations; (iv) as precluded by *res judicata*; (v) for failure to state a claim against Judge Rubin due to absolute judicial immunity; (vi) for failure to state a claim against Defendant Solari due to absolute prosecutorial immunity; and (vii) for failure to state a claim against Defendant Moreira because she is not a state actor against whom an action may be brought under 42 U.S.C. § 1983.[1] The Court considers Defendants' motions, beginning with their jurisdictional challenges.

As a threshold matter, before addressing the present motions, however, the Court notes that Plaintiff has filed two "Motions to Change Venue," which are properly construed as motions for reallocation of this matter to a different judge within the District. In his motions, Plaintiff alleges, without factual basis, that this Court is racist, and requests that the matter be transferred to a judge in the Newark vicinage. Local Civil Rule 40.1(e) states that the disposition of any request for reallocation "shall be upon order of the Chief Judge." Here, however, Plaintiff's December 13, 2017, and January 8, 2018, motions for reallocation are substantively identical to, and duplicative of, his March 10, 2016 "Motion to Change Venue," which was denied by then

---

[1] Defendants also asked the Court to abstain from hearing this matter under the *Younger* doctrine, but as dismissal is appropriate on other bases, including jurisdictional bases, the Court declines to consider this argument.

4

Chief Judge Simandle on March 23, 2016. Accordingly, in the absence of any new factual allegations, Plaintiff's motions for reallocation are denied as already decided by, and for the reasons set forth in, Judge Simandle's Order.

III. STANDARD OF REVIEW

A. Fed. R. Civ. P. 12(b)(1)

"Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Application of the *Rooker-Feldman* doctrine to deprive the Court of subject matter jurisdiction is an appropriate basis for dismissal under Rule 12(b)(1). *Gary v. Braddock Cemetery*, 517 F.3d 195, 206 (3d Cir. 2008). Eleventh Amendment immunity may also be invoked through a 12(b)(1) motion as depriving the Court of subject matter jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 694, n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). Fed. R. Civ. P. 12(b)(6).

B. Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho,* 423 F.3d at 351. It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it

5

rests." *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 149–50 n. 3 (1984) (quotation and citation omitted). A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Bell Atlantic v. Twombly,* 550 U.S. 544, 583 (2007) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions.") (internal citations omitted); *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*.").

Following the *Twombly/Iqbal* standard, the Third Circuit applies a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Fowler,* 578 F.3d at 210. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* A complaint must do more than allege the plaintiff's entitlement to relief. *Id.* However, this standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly,* 127 S. Ct. at 1965); *see also Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. . . . The pleading standard is not akin to a probability requirement, . . . to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)). Nonetheless, a court need not credit either "bald assertions" or "legal conclusions" in a

complaint when deciding a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429–30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. *Hedges v. U.S.,* 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991)). Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. *Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,* 181 F.3d 410, 426 (3d Cir. 1999).

Plaintiff in this matter is proceeding, *pro se*. "The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972)). "Courts are to construe complaints so 'as to do substantial justice,' Fed. R. Civ. P. 8(f), keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). "[T]here are limits to [the courts'] . . . flexibility. . . . [P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson,* 652 F.2d 371, 373 (3d Cir. 1981)).

III. ANALYSIS

"The United States Supreme Court has explained that 'a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction.'" *Bolick v. Sacavage*, 617 F. App'x 175, 177 (3d Cir. 2015) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007)). As noted above, "[t]he Rooker-Feldman doctrine and the Eleventh Amendment . . . are jurisdictional in nature." *Id.* at 177 (citing *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir.2006) *(Rooker–Feldman); Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n. 2 (3d Cir.1996) (Eleventh Amendment)). Defendants' other bases for dismissal, including the statute of limitations, *res judicata*, and judicial and prosecutorial immunity are "non-jurisdictional grounds." *Id.* at 177 (citing *Kach v. Hose,* 589 F.3d 626, 639 (3d Cir. 2009); *Melo v. Hafer,* 13 F.3d 736, 744–45 (3d Cir. 1994)).

Here, as explained below, the Court lacks subject matter jurisdiction over Plaintiff's claims against Defendants Rubin and Solari, pursuant to the *Rooker-Feldman* doctrine and the immunity granted by the Eleventh Amendment. Accordingly, because the Court grants Defendants' Fed. R. Civ. P. 12(b)(1) motion to dismiss, and finds that dismissal of Plaintiff's Complaint against Defendants Rubin and Solari is appropriate on jurisdictional grounds, its consideration of Defendants' additional arguments under Fed. R. Civ. P. 12(b)(6) with respect to Defendants Rubin and Solari is offered only to the extent that Plaintiff intended, in his vague, *pro se* Complaint, to raise some cause of action falling within the Court's jurisdiction. For example, Plaintiff's lack of legal sophistication renders it not immediately apparent to the Court on the face of the pleadings whether Plaintiff intended to seek some relief that might not call upon this Court to reject the state court's judgment involuntarily committing Plaintiff to a psychiatric institution or whether Plaintiff intended to bring suit against the Defendants Rubin

8

and Solari in their individual capacities. Construing Plaintiff's *pro se* pleadings liberally therefore, the Court will also grant Defendants' 12(b)(6) motion to dismiss on non-jurisdictional bases to the extent Plaintiff raised such claims. Finally, the Court also finds that Plaintiff has failed to state a claim against Defendant Moreira.

A. *Rooker-Feldman* Doctrine

The *Rooker–Feldman* doctrine bars from federal consideration "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). *Rooker–Feldman* is properly invoked when the following four factors are satisfied: "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010) (quotations omitted, alterations in original).

Here, this Court's consideration of Plaintiff's claims against Defendants Rubin and Solari is clearly barred by application of the doctrine. The sum total of Plaintiff's allegations against Prosecutor Solari and Judge Rubin are that they, respectively, sought to have Plaintiff civilly committed and ordered Plaintiff civilly committed after a state court proceeding. Plaintiff seeks $35 billion in damages for having been committed pursuant to the state court's commitment order. Therefore, (1) Plaintiff lost in state court by unsuccessfully opposing involuntary commitment proceedings; (2) Plaintiff complains of injuries, namely commitment against his will, that were directly caused by the state court's order; (3) the state court's commitment order

9

was rendered on January 6, 2012, before the May 8, 2014 filing of Plaintiff's Complaint in this matter; and (4) in order for this Court to find that Defendants Solari and Rubin violated Plaintiff's rights by seeking and entering an order of commitment against him, this Court necessarily must review and reject the Court's commitment order. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claims against Defendants Rubin and Solari for monetary damages arising from Plaintiff's involuntary commitment, and Defendants' motion to dismiss on this basis, pursuant to Fed. R. Civ. P. 12(b)(1) is granted.

The same cannot be said, however, of Plaintiff's claims against his public defender, Defendant Moreira. Plaintiff alleges that Defendant Moreira cooperated with the Prosecutor and Judge in Plaintiff's case, against Plaintiff's interests, attempted to coerce Plaintiff into entering a guilty plea against Plaintiff's wishes, and refused to release to Plaintiff copies of two expert reports, which Plaintiff believed were favorable to his opposition to commitment. These claims challenging the quality and character of Defendant Moreira's representation of Plaintiff do not require the Court to review or reject the ultimate commitment order entered by the state court. Accordingly the *Rooker-Feldman* doctrine does not bar consideration of claims against Defendant Moreira.[2]

B. Eleventh Amendment Immunity

"A state is generally entitled to immunity in federal court from suits by private parties, including their own citizens. This protection from suit extends to state agencies as well as state officials sued in their official capacities for monetary damages." *A.W. v. Jersey City Pub. Sch.*,

---

[2] By extension, to the extent that Plaintiff intended to raise claims of conspiracy or unlawful cooperation by Defendants Rubin and Solari, either with one another or Defendant Moreira, to deprive Plaintiff of his constitutional rights, the *Rooker-Feldman* doctrine does not apply to deprive the Court of jurisdiction. As set forth, *infra*, however, Plaintiff fails to state a claim against any Defendant.

341 F.3d 234, 238 (3d Cir. 2003). Judge Rubin, now retired, was a state official of the New Jersey Superior Court at the time of the events alleged in Plaintiff's Complaint. Defendant Solari, similarly, acted as a state official in prosecuting Plaintiff. *Beightler v. Office of Essex Cty. Prosecutor*, 342 F. App'x 829, 832 (3d Cir. 2009) ("'when [New Jersey county] prosecutors engage in classic law enforcement and investigative functions, they act as officers of the state.'" (quoting *Coleman v. Kaye,* 87 F.3d 1491, 1505 (3d Cir. 1996) (alterations in original)).

There are only three exceptions to Eleventh Amendment immunity: "(1) abrogation by an Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." *M.A. ex rel. E.S. v. State–Operated Sch. Dist.*, 344 F.3d 335, 345 (3d Cir. 2003). No exceptions apply in the case at bar with respect to Defendants Rubin and Solari. Eleventh Amendment immunity has not been abrogated by Congress with respect to § 1983 suits against the States. *Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States."). Moreover, it is well-established that "[t]he State of New Jersey has not waived its sovereign immunity with respect to § 1983 claims in federal court." *Mierzwa v. United States*, 282 Fed. Appx. 973, 976 (3d Cir. 2008). Finally, in his Complaint, Plaintiff seeks monetary damages against all Defendants, without specifying whether his suit is brought against Defendants in their official or individual capacities. Reading Plaintiff's Complaint broadly to allege both official and individual capacity suits, the Court finds that Defendants Rubin and Solari are entitled to Eleventh Amendment immunity to

the extent sued in their official capacities. As discussed in more detail below, Defendant Moreira is not a state actor, and therefore is not entitled to Eleventh Amendment immunity.

C. Judicial Immunity

"The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991)). Following the Supreme Court's guidance, the lower courts "must engage in a two-part inquiry to determine whether judicial immunity is applicable." *Ibid.* "'First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.'" *Id.* at 768 (quoting *Mireles*, 502 U.S. at 11, 112 S.Ct. at 288). "'Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" *Ibid*. "With respect to the first inquiry, 'the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'" *Id.* at 768-69 (quoting *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107). The courts must "'draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts." *Id.* at 769 (quoting *Forrester*, 484 U.S. at 227, 108 S.Ct. at 544).

"With respect to the second inquiry, we must distinguish between acts in the "clear absence of all jurisdiction," which do not enjoy the protection of absolute immunity, and acts that are merely in "excess of jurisdiction," which do enjoy that protection" *Id.* at 769 (citing *Stump*, 435 U.S. at 356 n. 6, 98 S.Ct. at 1104 n. 6 (citation omitted)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in

excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 769 (quoting *Stump*, 435 U.S. at 356–57, 98 S.Ct. at 1105 (citation omitted)). "Immunity will not be forfeited because a judge has committed 'grave procedural errors,' *Stump*, 435 U.S. at 359, 98 S.Ct. at 1106, or because a judge has conducted a proceeding in an 'informal and ex parte' manner. *Forrester*, 484 U.S. at 227, 108 S.Ct. at 544." *Id.* at 769. "Further, immunity will not be lost merely because the judge's action is 'unfair' or controversial." *Id.* at 769 (quoting *Cleavinger*, 474 U.S. at 199–200, 106 S.Ct. at 500). The courts' analysis focuses "on the general nature of the challenged action, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision." *Id.* at 769. *See Mireles*, 502 U.S. at 13, 112 S.Ct. at 288 ("[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, we look to the particular act's relation to a general function normally performed by a judge ....") (citation omitted).

Here, Plaintiff seeks money damages against Defendant Rubin for ordering Plaintiff committed to a psychiatric institution after a judicial proceeding, and, presumably, for his conduct in the course of that proceeding. The conducting of judicial proceedings, and issuance of final orders and judgments clearly fall within the realm of judicial acts protected by absolute immunity. The commitment order was issued by Judge Rubin in his official capacity after a hearing before the New Jersey Superior Court, and there is no suggestion that he lacked jurisdiction over Plaintiff's case or otherwise acted in the absence of all jurisdiction. Judge Rubin is therefore absolutely immune from Plaintiff's § 1983 action for monetary damages, and the Complaint against him is dismissed, in its entirety, with prejudice.

D. Prosecutorial Immunity

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 410 (1976). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Here, the only conduct of Defendant Solari for which Plaintiff seeks to recover money damages under § 1983 is her seeking to have him institutionalized in a psychiatric institution through a judicial proceeding. This act was undertaken by Defendant Solari in the course of pursuing her criminal prosecution of Plaintiff and in her role as an advocate for the State of New Jersey. Defendant Solari is therefore entitled to absolute immunity from the claims raised in Plaintiff's Complaint, which are dismissed with prejudice.

E. Public Defender Moreira

"'[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" *Gause v. Haile*, 559 Fed. Appx. 196, 198 (3d Cir. 2014) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)). Defendant Moreira's alleged misconduct in attempting to coerce Plaintiff to plead guilty and refusing to grant Plaintiff access to expert reports falls within the realm of the traditional functions of counsel, namely advising a criminal defendant of the consequences of proceeding to trial and control of the case file. Accordingly, because a public defender "is not liable under § 1983 when performing a lawyer's traditional functions," Plaintiff's claims against Defendant

14

Moreira on these bases are dismissed. *Stankowski v. Farley*, 251 F. App'x 743, 747 (3d Cir. 2007).

"Public defenders may be liable, however, for intentional misconduct if they conspire with state officials to deprive their clients of constitutional rights." *Stankowski*, 251 F. App'x at 747 (citing *Tower v. Glover,* 467 U.S. 914, 923 (1984)). Although Plaintiff alleges that "Defendant violated Plaintiff constitutional rights by conniving with the racist and evil judge, Rubin and the racist and evil state prosecutor, Dawn M. Solari, to order Plaintiff to Ann Klein Forensic Center to be institutionalized," Plaintiff fails to allege any specific facts as to the nature or conduct of the alleged conspiracy. "§ 1983 claims against . . . defense attorneys are . . . unavailing . . . [where Plaintiff] has presented only conclusory allegations of conspiracy, which are insufficient from a pleading perspective." *Pittman v. Martin*, 569 F. App'x 89, 91–92 (3d Cir. 2014) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 178–79 (3d Cir. 2010)). Consequently, Plaintiff's conspiracy claim is not pleaded with the requisite particularity and also is dismissed.[3]

F. Statute of Limitations

"New Jersey's two-year limitations period on personal injury actions, N.J.S.A. 2A:14-2, applies to a civil rights claim under § 1983." *Montgomery v. De Simone*, 159 F.3d 120, 126 n. 4 (3d Cir. 1998). "It is axiomatic that under federal law, which governs the accrual of section 1983 claims, 'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'" *Id.* (quoting *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir. 1991)).

---

[3] The Court notes that to the extent Plaintiff intended to raise a conspiracy claim against Defendants Rubin and Solari, the same pleading deficiencies warrant dismissal.

In this case, Plaintiff contends that his constitutional rights were violated when he was sentenced to be involuntarily committed to a psychiatric institution after a criminal proceeding before Judge Rubin. "[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 489–90 (1994). The Complaint does not allege that Plaintiff's involuntary commitment was ever invalidated. Accordingly, while the two-year statute of limitations does not appear to have begun to run, more importantly, Plaintiff has failed to establish that his claim has even accrued. Dismissal of Plaintiff's claims is thus appropriate, not because they are time-barred, but because they lack the requisite basis in fact.

Plaintiff's claims against Defendant Moreira may also be construed as arising not only from Plaintiff's involuntary commitment, but also from Defendant Moreira's alleged acts of disloyalty and malfeasance as Plaintiff's legal counsel. New Jersey law imposes a two-year statute of limitations for legal malpractice claims against public attorneys. N.J. Stat. Ann. § 59:8-8; Stoeckel v. Township of Knowlton, 902 A.2d 930, 943 (N.J. Super. Ct. App. Div. 2006) ("All . . . causes of action against publicly employed attorneys which accrued on or after July 1, 1994, [except causes of action for tortious intentional conduct by a publicly employed attorney which accrued prior to June 29, 2004,] are subject to the two-year statute of limitations."). A legal malpractice claim accrues upon a criminal defendant's exoneration, which "might be vacation of a guilty plea and dismissal of the charges, entry of judgment on a lesser offense after spending substantial time in custody following conviction for a greater offense or any disposition more beneficial to the criminal defendant than the original judgment." *McKnight v. Office of the Pub. Defender*, 962 A.2d 482, 483 (N.J. 2008). A determination of actual innocence is not required; rather, only a demonstration that the Defendant is "able to show some injury caused by the

16

alleged malpractice whether that relief is dismissal of the charges, acquittal on retrial, conviction of a lesser included offense or otherwise." *Id.* Again, Plaintiff has not alleged that the involuntary commitment judgment against him was ever lessened or overturned, meaning that he has failed to allege that his claim has accrued at all. Dismissal of Plaintiff's claims against Defendant Moreira is therefore also appropriate.

G. Res Judicata

Finally, as noted above the Court takes judicial notice of the Complaint and judgments in *Stephen Uko Udoh v. State of New Jersey et al.*, 13-cv-7491, and *Stephen Uko Udoh v. Stephen B. Rubin et al.*, 13-cv-7492. *See* 13-cv-7491, ECF No. 1, Complaint ("Defendants violated Plaintiff constitutional rights by ordering Plaintiff to Ann Klein Forensic Center, a psychiatric hospital . . ."); 13-cv-7492, ECF No. 1, Complaint (complaining of Plaintiff's arrest and trial for "false charges," resulting in his institutionalization). In those cases, Plaintiff brought substantially similar claims to those raised in the present matter against Defendants Rubin and Solari (the 7491 action), and Rubin, Solari, and Moreira (the 7492 action), concerning conduct that occurred in the same incident — Plaintiff's criminal proceeding. Those claims were dismissed with prejudice by the District of New Jersey, Hon. Joel Pisano, U.S.D.J., presiding, on January 2, 2014, and December 20, 2013, respectively. "*Res judicata*, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Attorney Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (citing *In re Mullarkey,* 536 F.3d 215, 225 (3d Cir.2008)). "A party seeking to invoke *res judicata* must establish three elements: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Id.* (quotations omitted). "The doctrine of *res judicata* bars not only claims that were

brought in a previous action, but also claims that could have been brought." *Id.* The claims against Defendants Rubin and Solari that Plaintiffs seek to bring in the present action were clearly raised in the prior actions, which were dismissed with prejudice. *Res judicata* therefore bars this Court's reconsideration of those issues. Relatedly, while it appears that Plaintiff's claims concerning the deficiencies in Defendant Moreira's legal representation of Plaintiff were not specifically raised in the previous actions, they arise out of the same incident and basis of operative facts as those brought in the previous actions, including the one naming Moreira as a Defendant. Those claims too, therefore, are precluded. *Id.*

IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is granted with respect to Defendants Rubin and Solari, to the extent Plaintiff's *pro se* Complaint seeks to recover damages resulting from his January 2012 institutionalization or to proceed against Defendants in their official capacities. Defendants' motion to dismiss Plaintiff's Complaint against all three Defendants for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) is granted, and all claims in the Complaint, including those raised against Defendants in their individual capacities, are dismissed, with prejudice. The Court notes that the Third Circuit has held that "[a] district court should not dismiss a *pro se* complaint without allowing the plaintiff leave to amend unless amendment would be futile." *Hill v. Rozum*, 447 F. Appx. 289, 290 (3d Cir. 2011) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).[4] No leave to amend will be granted in this case

---

[4] The Court also notes that Plaintiff has, in effect, already been afforded the opportunity to amend in the related cases concerning the same subject matter before Judge Pisano.

because the jurisdictional and claim preclusion barriers cannot be cured by amendment, rendering futile any effort by Plaintiff to amend the Complaint.


Dated:     1/30/2018                              /s/ Freda L. Wolfson
                                                                            The Honorable Freda L. Wolfson
                                                                              United States District Judge